SANDRENA EVANS,

K. E., Ka. E., Kad. E.,

D. G., D. B., N. B.

VERSUS

EAST BATON ROUGE PARISH HOUSING AUTHORITY,

J. WESLY DANIELS JR.,

LASHAWNA WHITE,

REGINALD HERD,

ABC INSURANCE COMPANY,

ACTION NO.

IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

---

## COMPLAINT

---

NOW INTO COURT, through undersigned counsel, comes **SANDRENA EVANS,** plaintiff in this matter, a person of the full age, a citizen of the United States of America and a resident of East Baton Rouge Parish Louisiana, who files this complaint individually and on behalf of her minor children; K___ E___, Ka___ E___, Kad___ E___, D___ G___, D___ B___, and N___ B___ against Defendants Housing Authority of East Baton Rouge Parish, a duly authorized agency of the City of Baton Rouge; , J. Wesley Daniels, Jr. the chief Operating Officer of the Housing Authority of East Baton Rouge Parish and ABC Insurance Company. In support thereof avers as follows:

1

## INTRODUCTION

1. Plaintiff Sandrena Evans was a lessee/tenant who leased and resided at residential property located at 5958 Cadillac Street, Apartment # 11016, Baton Rouge, Louisiana 70811. This address was also the primary residence for her children: K. E., Ka. E., Kad. E., D.G., D. B., and N.B.

2. Sandrena Evans brings this action on behalf of herself and the other named plaintiffs against the defendants asserting various claims. These allegations include but are not limited to claims of discrimination, violations of the American with Disability Act, Section 504 of the Rehabilitation Act of 1973, breach of implied warranty of habitability, breach of contract, harassment, violations of The Fair Housing Act, negligence and gross negligence, unjust enrichment, fraud, conspiracy, and wrongful eviction.

3. Plaintiff specifically alleges that Defendants, acting as lessors to the above-mentioned property, discriminated against her minor child, K█████ E████, on the basis of his disability.

4. Plaintiff K████ E████ is paraplegic who suffers from a complete loss of function in his lower body. He is substantially limited in his ability to walk and is required to use a wheelchair to physically move from location to location. Due to his physical disabilities, Kevin Evans is a protected class of persons under the American with Disabilities Act.

Defendants have refused on multiple occasions to provide any accommodations to the Plaintiff and have refused to provide any reasonable modification to the leased premises.

5. Plaintiff specifically alleges that the Defendants, as lessors, violated the Fair Housing Act and other federal statutes and state laws by serving eviction notices on different occasions to terminate the plaintiff's lease agreement without legal basis. These attempts to wrongfully evict have happened multiple times. The Defendants eventually successfully evicted the Plaintiff from the property without just cause. The Defendant additionally violated the rights of the Plaintiffs through "constructive eviction" by making it difficult for the Plaintiff to remain on the property.

6. Plaintiff specifically alleges that the Defendants, as lessors, violated the Plaintiffs' right to a habitable rental unit which meets minimum standards of safety, sanitation and living conditions. Additionally, through acts and omissions by the Defendants in violation of the implied warranty of habitability and applicable federal and state statutes Plaintiff K█ E█ suffered second and third degree burns from scalding water.

7. Plaintiff alleges that the Defendants materially breached the terms of the lease agreement between the parties by failing to make sure the home was fit for habitation, failing to repair defects, and by committing harassment on the plaintiffs.

8. Plaintiff alleges that the Defendants engaged in conduct which was a disregard for the health and safety of the plaintiffs. This conduct resulted in the plaintiffs suffering from substantial and hazardous mold exposure.

9. Further, Defendants have routinely committed unlawful intentional harassment against the Plaintiff using fraud, false communication with the intent to cause an emergency response, intimidation, and coercion.

10. As a result of the Defendants' acts and omissions as alleged herein, the Plaintiffs have suffered and will continue to suffer damages. By this lawsuit, the petitioners seek to hold the defendant liable for their harassment, pervasive mold and other toxins, atrocious living conditions, personal injuries, and other damages caused by their neglect and malfeasance.

## DEFENDANTS

11.

Made Defendants herein are:

A. **EAST BATON ROUGE PARISH HOUSING AUTHORITY,** a duly authorized agency and domestic corporation domiciled in East Baton Rouge Parish, engaged in or engaging in inspections and providing housing, whose

appointed agent for service of process is the Chief Executive Officer of the Housing Authority.

B. **J. WESLY DANIELS, JR.,** an adult citizen and resident of the state of Louisiana. He is upon information and belief, a domiciliary of East Baton Rouge Parish, Louisiana. He is the Chief Executor Officer of the East Baton Rouge Parish Housing Authority. At all times mentioned herein acted in the course and scope of his employment and under color of law. Daniels is sued in his individual capacity and in his capacity as Chief Executor Officer.;

C. **LASHAWNA WHITE.,** an adult citizen and resident of the state of Louisiana. She is, upon information and belief, a domiciliary of East Baton Rouge Parish, Louisiana. She is employed as a property manager by East Baton Rouge Parish Housing. At all times mentioned herein acted in the course and scope of her employment. Lashawna White is sued in her individual capacity and in her capacity as property manager.

D. **REGINALD HERD,** an adult citizen and resident of the state of Louisiana. He is, upon information and belief, a domiciliary of East Baton Rouge Parish, Louisiana. He is employed as the Vice President of the East Baton Rouge Parish Housing. At all times mentioned herein acted in the course and scope of her employment. Reginald Herd is sued in his individual capacity and in his capacity as property manager.

E. **ABC INSURANCE COMPANY,** an insurer whose identity is unknown to the Plaintiff, but whose existence is required by operation of law, covering Defendants for the types of injuries complained of herein;

Hereinafter collectively referred to as "Defendants"

12.

The defendants are justly and truly indebted unto the Petitioners jointly and in solido, for such damages as will fully and fairly compensate Petitioner, all right with legal interests thereon from the date of judicial demand until paid, for costs of expert witnesses retained, for attorney

fees, and for all costs of these proceedings for the following reasons, set forth in Section IV and V.

13.

Plaintiffs (hereinafter collectively referred to as "Plaintiffs") made herein are the following:

A. **SANDRENA EVANS**, (hereinafter referred to as Ms. Evans) a person of the full age, residing in and a domiciliary of East Baton Rouge Parish Louisiana.

B. Ms. Evans brings this suit individually and on behalf of her minor children as their natural tutrix,



1) **K**▮▮ **E**▮▮, (date of birth ▮▮▮
2) **KA**▮ **E**▮▮, (date of birth ▮▮▮
3) **KAD**▮ **E**▮ (date of birth ▮▮▮
4) **D**▮▮ **G**▮, (date of birth ▮▮▮
5) **D**▮▮ **B**▮ (date of birth ▮▮▮
6) **N**▮ **B**▮▮ (date of birth ▮▮▮

## JURISDICTION AND VENUE

14.

This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C Section 1331 because housing is a federally enclave, because Plaintiffs assert claims under federal constitutional and statutory law, and Section 1343 (a)(3) (a)(2) & (a)(4) for violations of

the Americans with Disabilities Act, the federal Fair Housing Act, 42 U.S.C. Section 3601, the Rehabilitation Act of 1973, 42 U.S.C. Section 794, 24 C.F.R. Section 944.4. 24 C.F.R. § 966.4(l)(2), 42 U.S.C. § 1437d(l)(1).

15.

Pursuant to pendent jurisdiction, this court has supplemental jurisdiction under U.S.C. Section 1367 to Plaintiffs state law claims and all attendant and related causes of action arising from the same nucleus of operative facts and out of the same facts to the related state law claims for breach of contract, breach of warranty, unjust enrichment and negligence.

16.

Pursuant to pendent jurisdiction, this court has personal jurisdiction over Defendant Housing Authority of East Baton Rouge Parish, as it is a citizen of the State of Louisiana, because it caused economic and personal injury to the Plaintiffs through acts and omissions committed as landlord and/or manager of Zion Terrace, within the Parish of East Baton Rouge, State of Louisiana.

17.

Pursuant to pendent jurisdiction, this court has personal jurisdiction over J. Wesly Daniels because as Chief Executive Officer he was responsible for the decisions of the Housing Authority of East Baton Rouge Parish Defendant Housing authority and the supervision the company's employees subordinate to him. The actions and omission by him have caused economic and personal injury to the Plaintiffs within the Parish of East Baton Rouge, State of Louisiana.

7

18.

Pursuant to pendent jurisdiction, this court has personal jurisdiction over Reginald Herd because as the Vice President of the Housing Authority of East Baton Rouge Parish he responsible authority and the supervision the company's employees subordinate to him, he has been a direct point of contact for the Plaintiff in regards to many for the allegations set forth constituting this complaint. The actions and omission by him have caused economic and personal injury to the Plaintiffs within the Parish of East Baton Rouge, State of Louisiana.

19.

Pursuant to pendent jurisdiction, this court has personal jurisdiction over Lashawna White because she caused economic and personal injury to the Plaintiffs through acts and omissions committed as manager of Zion Terrace.

20.

Pursuant to pendent jurisdiction, this court has personal jurisdiction over Defendants ABC Insurance Company pursuant to Louisiana Revised Statute 13:3201 as Defendant is a domestic of foreign insurer which is authorized to do business in and regularly transacting business in Louisiana and has minimum contacts in Louisiana such that maintenance of this suit with not offend traditional notions of fair play and substantial justice. At all time relevant ABC insurance company provided insurance to East Baton Rouge Parish Housing Authority for the types of damages sought herein, as such ABC insurance company is made party Defendant.

21.

Venue lies in the United States District Court for the Middle District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this complaint happened in this district; because the Defendants are located in this district; and because Plaintiffs rented property is located in this district.

## FACTUAL ALLEGATIONS

22.

East Baton Rouge Parish Housing Authority (sometimes hereinafter referred to as EBRPHA) is an agency which manages public housing properties, provides rental assistance for low-income families, and is responsible for day to day operations with the lessees that the entity contracts with. EBRHA also receives federal funding through the U.S. Department of Housing and Urban Development (hereinafter referred to as "HUD").

23.

The entity "HUD" manages the EBRHA through implementation and enforcement of guidelines and programs for the purpose of providing affordable housing and maintaining quality housing standards. Due to their association with HUD, EBRHA is required to comply with federal law, regulations set by HUD, and regulations set by other federal agencies.

24.

During all times relevant to this matter EBRHA acted as the landlord and/or the owner of

Zion Terrace Apartments, an apartment complex located at 5958 Cadillac St. Baton Rouge

Louisiana 70811.

25.

Acting as the Landlord, EBRHA receives rental payments from the tenants of Zion

Terrace Apartments. These rental payments from the tenants of Zion Terrace Apartments are

subsidized through the U.S. Department of Housing and Urban Development ("HUD").

26.

On or around April 2012, the petitioner, Ms. Evans first signed a lease agreement with

EBRHA. Pursuant to this lease Agreement Plaintiff Ms. Butler (along with her children) would

be the tenants, EBRHA would be the Landlord, and the property leased was 5958 Cadillac Street

Apartment 11016 Baton Rouge Louisiana 70811. This apartment is located at and is a part of the

Zion Terrace Apartments.

27.

Subsequently, on or around this time in April 2012, Plaintiff Ms. Evans moved into the

aforementioned apartment with her minor children. The initial term for this lease agreement was

for a period of one year. However, every presiding year around March or April Plaintiff Ms.

Evans would renew her lease agreement. Plaintiff Ms. Evan's last renewal was in March 2022.

After March of 2022 the Plaintiffs resided at the Zion Terrace Apartment residence pursuant a

month-to-month lease agreement with the Defendants.

28.

EBRPH subsidized the plaintiffs' rental payments through HUD. Through this HUD subsidization the federal government paid Defendants to lower the rent for Plaintiffs due to Plaintiffs being a "low-income tenant".

29.

Pursuant to the Terms of Lease Agreement between the Plaintiff and the Defendant, EBPHA obligated itself to:

   a) Maintain the dwelling units, development, facilities, and common area, not otherwise assigned to Tenant for maintenance and upkeep, in a clean and safe condition.

   b) To comply with the requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety.

   c) To make necessary repairs to the dwelling unit

   d) To maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilation, and other facilities and appliances.

   e) To offer Tenant a replacement unit necessary repairs cannot be made within a reasonable time.

30.

Per their agreement, if a repair was necessary or if there was a hazardous issue, Plaintiffs were required to give notice of the defect to the Zion Terrace Apartments management office. Generally, during the entire term of the plaintiff's leases, repairs and defects would not be

11

immediately fixed upon given notice. Defects and property issues would instead normally be examined during a once every three-month inspection performed by EBRHA.

31.

Additionally, EBRHA would perform inspections on the rental units of Zion Terrace Apartments roughly once every three months. During these inspections maintenance workers and/or the property manager would assess the condition of Plaintiffs' apartment and/or tenants complaints of defects. If repairs were deemed necessary the individual who performed the inspection would create a "work order" document which would outline the information concerning a maintenance repair task.

32.

Following the Plaintiffs rental inspections, if repairs were deemed necessary, the maintenance worker performing the inspection and/or representatives of EBRHA would generally inform the Plaintiffs that someone would come back to fix defects which they were given notice of. However, generally no one would actually come back to fix the defected property. Furthermore, the Defendants generally would not adequately address issues affecting Plaintiffs" peaceful possession and right to habitable possession.

33.

In addition to the three-month inspection, a once-a-year inspection was performed at the Zion Terrace Apartment pursuant to the HUD Uniform Physical Condition Standards. The HUD Uniform Physical Condition Standards refers to a set of standards used by inspectors working for HUD to assess physical conditions of housing units. It is the belief of the Plaintiffs that EBRHA

regularly failed the yearly inspection concerning Zion Terrace Apartments due to the Defendants' failure and refusal to maintain the residence as a safe and habitable unit.

34.

Throughout the terms of her several lease agreements Plaintiff Ms. Evans experienced several faulty, damaged, and hazardous defects in regards to her rented unit. These defects included but were not limited to: her stove/oven in her home being inoperable, a malfunctioning breaker box in her bedroom which would often cause electrical sparks, bathroom pipes and plumbing which did not work at all and caused and caused the bathroom toilet and shower unusable, water leaks that caused high water bills, and a lack of cold and/or hot water for the Plaintiffs. Additionally, Pest control by the Defendant/lessor was ineffective to where the Plaintiff had to pay for her own pest control services.

35.

On or around June of 2022 Ms. Evans noticed sewage leaking over to her rental unit from the apartment next door. This leakage was passing through into the closet of the bedroom of Ms. Evans. It was at this time she noticed pervasive mold. Despite giving notice to the Defendants, the mold was not examined or cleaned properly. Shortly later in 2023 the minor child N B started becoming progressively ill. It was soon later discovered that mold was also substantially located in the room of the minor children. This additional mold outbreak was also reported to Defendants.

13

36.

Despite the notice of the hazardous mold, it took weeks for the Defendants to have an individual inspect the conditions. However, neither the maintenance nor the Defendants ever remedied the mold outbreak

37.

All the Plaintiffs, Ms. Evans and all of her children, suffered various rehabilitating symptoms. These symptoms included but were not limited to respiratory issues, allergic reactions, chronic fatigue and headaches. Additionally, Plaintiff Dearbrey Breau was (5) at this time the mold was first noticed and spent her entire life exposed to the hazardous conditions. Plaintiff D      B    suffers from an developmental delay, mental retardation, mental deficiencies which is believed to have resulted from the mold exposure. A subsequent medical inspection confirmed that hazardous that the plaintiff had all been physically affected by the hazardous mold from their apartment unit.

38.

The Defendants, rather than properly remediating the property and employing licensed mold remediators, have taken action to cover up and hide the dangerous conditions. The mold infestation was never remediated.

39.

On or around January of 2024 it was discovered that high amounts of moisture in the air indicated that there was a possible malfunction with the HVAC system. Cladosporium, Stachybotry, Aspergillus/Penicillium, Chaetomium were found. It was also discovered that the

14

residence contained elevated levels of types of mold including but not limited to Myxomycetes, Curvularia, Chaetomium, Ascopores, Cladosporium, Epicoccum, Pestalotia, Nigrospora, Nigrospra, Stachybotry/Memnoniella, Scopulariopsis/Microaascus, Aspergillus/Penicillium.

40.

On are about January of 2023, Plaintiff Ms. Evans first gave notice to Defendants in regards to the hot water heater of her rented unit. The hot water heater attached to her rented unit was damaged or faulty causing only cold water to be available to the Plaintiffs. After giving notice to the Defendants of this issue the Defendant failed to remediate the hot water heater for a period of roughly 4 months. During these 4-month Plaintiffs did not have hot water available in their rented apartment unit. After waiting 4 months a maintenance worker ineffectively attempted repair of this hot water heater. This attempt caused boiling water throughout the pipes inside the home of the Plaintiff. As a result, Plaintiff K⬛ E⬛, while taking a bath, suffered third degree and second-degree burns.

41.

On or about June of 2023, Ms. Evans began making requests to EBRHA in which she specifically requested ADA accommodations for her Plaintiff K⬛ E⬛.

42.

Plaintiff K⬛ E⬛ is, and at all times relevant herein is a person with a handicap as defined by 42 U.S.C. Section 3602(h).

15

43.

As previously stated K█████ E████, who is a minor child , is a paraplegic. The unit rented by Plaintiffs did not have a wheelchair ramp located at the front or back entrance nor did it have bathroom doors wide enough for K████ E████ to enter by himself. Further per the lease agreement Ms. Evans was allocated a designated parking area. Her designated parking area did not have a wheelchair ramp located there. As such Ms. Evans would park her vehicle in the grass near her apartment to carry Plaintiff K████ E████ inside their residence.

44.

Despite request to be accommodated or relocated to a handicapped accessible apartment at Zion Terrace Apartments, the Defendants refused all accommodations. Further Defendant began "fining" Plaintiffs $25 tickets for parking in the grass. This action caused Ms. Evans to have to carry K████ E████ approximately 40 feet from the Plaintiff Parking area to the leased residence in order to enter and exit their vehicle.

45.

On or around July 11, 2023 Defendants initiated eviction proceedings against the Plaintiffs. In their eviction notice, the Defendants alleged that the Plaintiff engaged in criminal activities, were not abiding by state laws, and were threatening the health, safety and rights of other tenants. These allegations were entirely false and as such the eviction petition was dismissed during the hearing on the matter.

46.

During this time property manager Shawna White began to refuse to accept rent from Ms. Evans. Further Shawna White attempted to force Ms. Evans to pay Defendants' legal fees and court costs that the Defendants incurred during their attempted eviction.

47.

Defendant Shawna White is the property manager for Zion Terrace Apartments and at all times relevant to the claims asserted herein had and exercised custody, the right of direction, supervision, and control of said the rented property. As such Defendant Shawna White additionally had the right, duty, and obligation to insure, maintain, and repair said property at 5958 Cadillac Street Apartment 11016 Baton Rouge Louisiana 70811.

48.

On are around November 2023, Defendant Shawna White called the Baton Rouge Police Department and alleged she had video footage showing Plaintiff N▮▮ B▮▮▮, illegally breaking into the vehicle of another person. When Police Officers arrived, N▮▮ B▮▮ was removed by force from her rental unit by the Officers. N▮▮ B▮▮ was subsequently held under police custody, placed in the back of a police car, and then vigorously questioned regarding the alleged crime. Shortly later the responding officers would inspect the video which Shawna White claimed showed N▮▮ B▮ committing a crime. It was discovered that Shawna White's allegation was not factual and as such Naomi Butler was released from police custody.

17

49.

Defendant Reginald Herd, Vice President of EBRHA, was made aware of harassment issues concerning Shawna White and Plaintiffs. Reginald Herd is the direct supervisor of Shawna White. On are around November of 2023 Defendant Reginald Heard requested a meeting between himself, Plaintiff Ms. Evans, and Defendant Shawna White to address grievances concerning Shawna Whites harmful behavior. At this meeting Plaintiff Ms. Evans concerns were not addressed. After the meeting the harmful behavior of Defendant Shawna White continued.

50.

On are around January 2024, eviction proceedings were reurged by the Defendants. During this time Defendant Shawna White alleged that she obtained photos on social media of certain children of the Plaintiff in possession of firearms. Shawna White admitted she was not able to discern whether the instruments in the photos were firearms or toys, however the Court affirmed an eviction against Plaintiffs at this time.

51.

The Defendants have all suffered emotional distress, financial loss, physical harm, shock, stress, and loss of affordable housing as a proximate result of the Defendants' harassing, and discriminatory conduct, statements, and tactics, and other wrongful acts described.

52.

The prescriptive periods one year from the date that the plaintiffs knew or should have known that the illness suffered by them was caused due to exposure from toxic mold. Further the continuing nature of all the offenses described herein constitute actions under the continuing

18

violation doctrine. Under this doctrine the statute of limitations does not begin to run until the last act of a continuing violation occurs.

## FIRST CAUSE OF ACTION

(Violation of Fair Housing Act, Title II of the American with Disability Act, and Section 504 of the Rehabilitation Act of 1973)

### 53.

The Plaintiff incorporates and realleges by reference, as though fully set forth in this paragraph, all the allegations of the Complaint.

### 54.

The Defendants violated the unalienable rights of the Plaintiffs provided to them in of The Fair Housing Act, 42 U.S.C. 3601 et seq., Title II of the of the American with Disabilities Act (hereinafter referred to as "ADA"), and other incorporated acts by doing the following prohibited activities: Failing to provide ADA accommodation, attempting to wrongfully evict Plaintiffs, wrongfully evicting Plaintiffs, attempting a "constructive eviction of Plaintiffs, failing to adhere to the housing safety standards provided for by HUD, and failing to adhere to lessor obligations enforced by HUD.

### 55.

The Defendants unlawful conduct in violation of the ADA, Fair Housing Act, and Section 504 of the Rehabilitation Act includes, *inter alia*:

A. Refusing to make reasonable accommodations for the Plaintiff Kevin Evans.

B. Failure to operate Zion Terrace Apartments so that they are readily accessible to and usable by persons with disabilities.

C. Denying Plaintiff the opportunity to participate in or benefit from the leased property on the basis of his disability.

56.

The Defendant EBRHA is, and at all times relevant herein, is a public entity within the meaning of the ADA. 42 U.S.C. Section 12131(1). Further Plaintiffs K████ E████ is, and at all times relevant herein was "a qualified individual with a disability" within the meaning of Title II of the ADA. Plaintiff K████ E████ is, and at all times relevant herein is a person with a handicap as defined by 42 U.S.C. Section 3602(h).

57.

Because BRPHA is a housing authority that manages low income tenants and receives federal funds to do this, it is governed, overseen by and subjected to the rules put in place by HUD and other applicable federal statutes. HUD is responsible for enforcing federal fair housing laws including the Fair Housing Act, and The Americans With Disabilities Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973. All of which are regulations that the Defendants are subject to maintain in regards to their status as Landlord/owners of Zion Terrace Apartments.

58.

The Fair Housing Rights Act, by HUD, is a federal law that prohibits discrimination in housing based on protected classes. This law protects individuals renting property and prohibits

20

certain activities such as refusing to accommodate people with disabilities. Specifically the Fair Housing Act prohibits discrimination based on disability pursuant to 42 U.S.C. Section 3604(f).

59.

Title II of the American with Disabilities Act (hereinafter referred to as "ADA") requires, by federal law, that housing providers to make reasonable accommodations and reasonable modifications for individuals with disabilities. This act provides in pertinent part that: *"No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (*42 U.S.C. Section 12132).

60.

Section 504  of the Rehabilitation Act of 1973 prohibits discrimination against an otherwise qualified individual with a disability solely by reason of the disability in any program or activity receiving federal financial  assistance or under any program or activity conducted by an executive agency.

61.

EBRH is a covered program or activity because they receive federal financial assistance in the form of Section 8 Project Based rental assistance contracts to provide low income housing. Plaintiff Kevin Evans is an individual with a disability under Section 504, 34 C.R.F, 42 USC Section 12102, 29 U.S.C. Section 794 and U.S.C. Section 705.

62.

The Defendants violated the Plaintiffs rights under Fair Housing Act, Title II of the American with Disability Act, and Section 504 of the Rehabilitation Act of 1973 in its implementing of regulations and its failure to grant reasonable accommodations.

63.

Based on the aforementioned statutes and regulation, the Defendants are prohibited from refusal to make reasonable accommodations in rules, policies, practices, and services, when the accommodation may be necessary to afford person equal opportunity to enjoy a dwelling." 42 (U.S.C. Section 3604(f)(3)(B).

64.

The accommodations requested by the Plaintiffs were necessary to afford Plaintiff K█ E█ an equal opportunity to use and enjoy the dwelling. Further, the accommodations were reasonable because they did not impose undue burden nor would have fundamentally altered the Apartment Complex's program.

65.

Defendants duties under the Fair Housing Act and Title II of the ADA are mandatory and well established. Defendants had knowledge of its duties at all times relevant herein.

66.

Defendants were provided actual notice of each of its violations of the Fair Housing Act and Title II of the ADA and Act 504. Despite this knowledge Defendant has failed and refused to

take any steps to address the issues of the Plaintiffs. Defendants' failures constitute deliberate indifference.

## SECOND CAUSE OF ACTION

(Breach of Contract/Breach of Implied Warranties, Violation of the Fair Housing Act Obligations and Duties, Wrongful Eviction and Attempted Wrongful Eviction)

67.

Plaintiff repleads and incorporates by reference the allegations in each of the allegations contained in each of the foregoing paragraph.

68.

Defendants' acts and omissions constitute a breach of the lease agreement between the parties.

69.

Defendants have violated their contractual obligations with Plaintiffs through wrongful actions including not limited to the breach of the implied warranty of habitability; the breach of warranty that the leased thing is free from vices or defects; and the breach of the implied warranty of peaceful possession.

70.

A breach of a lease  agreement under Louisiana jurisprudence occurs when either the landlord or the tenant has failed to fulfill the obligations or terms outlined in their lease agreement.

71.

The Defendants' actions have breached the standards governing lease agreements set forth in Louisiana Civil Code articles 2696, 2697,2699, and 2700. These articles, in pertinent part, provide that a lessor must warrant the lessee peaceful possession of the leased property and must warrant the leased premises is suitable for its intended use. These code articles also constitute the implied warranty of habitability which dictates that a landlord must maintain the leased property to be suitable for living, make necessary repairs, and comply with health and safety codes.

72.

Additionally, Louisiana Civil Code article 2691 provides that the lessor is bound to make all repairs necessary to maintain the thing in a condition suitable for the purpose for which it was leased.

73.

Louisiana Civil Code article 2698 provides that in a residential lease the aforementioned apply to all persons who reside in the premises according to the lease. Louisiana 2696 provides that the owner/lessor of a building is generally liable for the condition of the leased premises.

74.

Upon engaging in the lease agreement with Ms. Evans, by operation of law Defendants provided Plaintiffs a warranty such that the rented premises was habitable and free from defects. Plaintiffs also relied on Defendant's representation as to the quality and habitability of its rental units in executing the all mentioned lease agreements.

75.

In addition the Louisiana State law, Defendants' actions and omissions described herein are in violation of the aforementioned laws and statutes, including but not limited to 24 C.F.R. Section 966 and 24 C.F.R. Section 5.705.

76.

Pursuant to 24 C.F.R. § 5.705 Defendants are required to use HUD's Uniform Physical Condition Standards as guidelines during inspections to ensure that the Plaintiff's leased unit was safe, well maintained, free from hazard, and that building systems were in working order. The Defendants have failed to maintain Plaintiffs leased property in compliance with this regulations.

77.

Furthermore the actual text of the lease agreement between the Defendants and Plaintiffs dictated that the Defendants were to: a) Maintain the dwelling units, development, facilities, and common area, not otherwise assigned to Tenant for maintenance and upkeep, in a clean and safe condition, and b) To comply with the requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety.

78.

Defendants' actions and omissions are in violation of the law pursuant to 24 C.F.R. § 966.4(I)(2), by which good cause is always required to evict or refuse to renew a lease for public housing tenants.

79.

Defendants are in violation of the law in regards 24 C.F.R. § 966.4(e). This statute dictates that a housing authority is obligated to the following: To maintain the dwelling unit in decent, safe, and sanitary conditions,; To make necessary repairs,; To maintain in good and safe working order electrical, plumbing, sanitary, heating, ventilating, and other facilities and appliances,; To supply running water and reasonable amounts of hot water and reasonable amounts of heat at appropriate times of the year.

80.

Defendants' aforementioned actions, omissions, and violations concerning the maintenance of the lease property are the proximate cause of the second and third degree burns suffered by Plaintiff K█ E█.

81.

The Defendants unlawful conduct includes, *inter alia*:

A. Attempting to violate the lease agreement between Plaintiffs and EBRHA by attempting an eviction without just cause.

B. Violating the terms of the lease agreement through the successful unjust eviction of the Plaintiffs.

26

C. Effectuating a constructive eviction through harassment and predatory acts with the intent to induce Plaintiffs to vacate the property. These acts include but are not limited attempting to create a false police report against Defendant Naomi Butler

D. Denying Plaintiff the opportunity to participate in or benefit from the leased property on the basis of his disability.

E. Failure to comply with safety and health regulations enforced by HUD.

F. Due to their failure to comply with HUD's Uniform Physical Condition Standards and their failure to maintain the leased unit as safe and free from hazard with building systems in working order.

G. Failing to adequately remedy the Plaintiff's leased unit's hot water heater, oven, mold infestation, pest infestation, faulty breaker box, bathroom pipes, faulty plumbing which resulted in flooding, and other water leaks.

H. Failing to promptly inspect the leased homes and develop and implement a plan to provide for the safety of Plaintiffs

I. Failure to fix and/or remedy broken, faulty and hazardous building systems and fixtures as described herein,

J. Failure to remediate the mold infestation or to provide alternative living arrangements when necessary.

K. Failing to ensure the home fit for human habitation and by failing to repair leaks and other defects to make each house habitable for human occupation.

L. Failure to remediate the hazardous mold condition affecting Plaintiffs leased property

82.

Mold is a type of fungus that consists of small organisms. In housing, mold grows in locations where there is moisture, such as leaks in roofs, windows, HVAC systems, pipes, or where there has been flooding or moisture buildup. Mold grows well on paper products, cardboard, ceiling tiles, and wood products. Mold can also grow in dust, paints, wallpaper, insulation, drywall, carpet, fabric, and upholstery.

83.

If mold is growing in a home, the mold needs to be addressed and remediated immediately and the underlying moisture needs to be remediated as well. The Centers for the Disease Control and Prevention ("CDC") recommends that "no matter what type of mold is present, you should remove it and work to prevent future growth."
www.cdc.gov.gov/mold/dampness_facts.htm.

84.

It is well-known that exposure to moldy environments can cause a variety of serious adverse health issues in humans such as headaches, skin and throat irritation and cognitive symptoms.

85.

Defendants owed a duty to Plaintiffs to keep the premises in a reasonably safe condition and to remediate moisture, mold, and other dangerous conditions. The acts and omission executed by Defendants fall below the reasonable standard of care required of owners and

property managers concerning residential tenancies. The aforementioned actions and omission, as well as additional actions performed by Defendants, materially breached the lease agreement between the parties and was the proximate cause of the Plaintiff's exposure to hazardous mold.

86.

Defendants breached the implied warranty of habitability by failing to exercise reasonable care in repairing dangerous defective conditions, including but not limited to water leaks and mold, and failing to remedy the leased premises pest/insect infestation.

87.

The Defendant was given adequate due notice in regards to all the defects and conditions which it has been alleged breached a legal warranty and/or made the leased residence inhabitable by the Plaintiffs.

88.

As a result of the mold exposure Plaintiff has incurred unreimbursed out of pocket economic losses, and have suffered and continue to suffer from severe health issues.

89.

The eviction attempted and completed by the Defendants constituted an unlawful breach of contract.

90.

As a result of the wrongful eviction Plaintiffs have suffered grave and serious permanent mental anguish, the loss of personal property, incurred unreimbursed out of pocket economic losses, and suffered other injuries. Defendants actions and omissions described herein are the proximate cause of these injuries. As such Defendants are liable for injuries and damages.

91.

Additionally Plaintiffs' interactions with Defendant Shawna White created a hostile living environment and interfered with their right to the peaceful enjoyment of their home. Defendant Shawna White spearheaded and initiated the wrongful eviction proceedings against the Plaintiffs as well. In addition Defendant White has harassed and spread false allegations concerning the Plaintiffs consistently throughout her employment with EBRHA.

92.

Shortly after the initial failed eviction Defendants violated the warranty rights of Plaintiffs as Defendant Shawna White Refused to accept rent payment from Plaintiff Sandrena Evans, threaten to evict her for unpaid balance, then attempted to force Ms. Evans to pay the attorney fees of the Defendants.

93.

The Defendants' failure to adequately investigate and address the harmful behavior or Defendant Shawna White violated Plaintiffs warranty of peaceful possession.

94.

Defendants were given notice by Plaintiffs of the unlawful behavior of Defendant Shawna White.

## THIRD CAUSE OF ACTION

(Negligence)

95.

Plaintiff repleads and incorporates by reference the allegations in each of the allegations contained in each of the foregoing paragraph.

96.

Provided for under Louisiana Civil Code art. 2315 negligence is a legal concept based on the general principle that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. Under this concept, Negligence occurs when a person or entity fails to act within the level of care that a reasonable person would in similar circumstances.

97.

Defendants in this matter wrongfully, negligently, willfully and maliciously caused Plaintiffs to be forcibly evicted from the leased premises.

98.

The acts and omissions of Defendants caused physical and emotional injury to Plaintiffs.

99.

Defendant had a duty of care to provide hot water that required the Defendants to ensure that the hot water heater was in a working and a safe condition. The Defendants breached this duty.

100.

Defendants further violated the duties of reasonable care owed to the plaintiff through the action described herein this petition. These actions include but are not limited to Defendants failure to maintain the leased premises in a safe and non hazardous condition; failure to prevent harassment and predatory behavior.

101.

The Defendants'conduct described herein this petition was of a gross and flagrant character, evincing blatant and reckless disregard for the health and safety of Petitioners. Defendants' reckless indifference to the rights of others is the equivalent to an intentional harm of them.

102.

Plaintiffs were injured by Defendants' negligent and grossly negligent conduct, and recklessness. In addition to previously mentioned economic and physical damages, plaintiff has also suffered from suffer emotional distress

103.

The acts and omission contained herein  indicate that Defendants are answerable for damages occasioned because they had a duty to remediate the property, but were negligent in failing to remediate the property or by improperly and defectively remediating the property which directly caused the above mentioned injury to Plaintiffs.

## FOURTH CAUSE OF ACTION

(Fraud, Conspiracy, Unjust Enrichment)

104.

Defendants are liable for fraudulent misrepresentations. Fraud is the misrepresentations or suppression of the truth made with the intent to obtain an unjust advantage for one party or to cause a loss or convenience to another. Fraud may also be silence of inaction. La. C.C. art 1953.

105.

As a result of the Defendants' non disclosure and silence in regards to the condition of the rented unit, misrepresentations regarding the upkeep and maintenance of the leased unit, and their misrepresentations to effect an eviction and constructive eviction, they gained an unfair financial advantage over Plaintiffs. For this reason, and based on the additional actions alleged above, Defendants are liable for civil conspiracy to commit fraud.

106.

By virtue of their course of administering, leasing, and repairing their rental units, the Defendants were aware of the conditions of the leased units, including without limitation the existence of mold, HVAC issues. This is in addition to the fact that Plaintiffs adequately reported these to the Defendants. Nevertheless, the Defendants knowingly and intentionally leased the rented unit to the Plaintiffs, falsely represented to the Plaintiffs that the unit was habitable at the onset of the lease agreement and throughout its duration, and misrepresented efforts to remediate the units defects.

107.

At all times relevant hereto, the Plaintiffs reasonably relied on the Defendants fraudulent and deceitful conduct and misrepresentations concerning the quality and maintenance of the leased unit as well as the remediation of the leased units defects, moisture issues, mold issues, water heater issues and other problems. Plaintiffs have all suffered physical and mental damages as a result of this reliance.

108.

Further, under Louisiana jurisprudence, unjust enrichment is a legal theory which states that a person who has been enriched without cause at the expense of another person must compensate that person, La. C.C. art. 2298.

109.

Throughout the 11 year course of the lease agreement between the named parties, Plaintiff Ms. Evans has duly paid money as rental payment to the Defendants.

34

110.

In light of the wrongful conduct described herein Defendants retention of would be inequitable and unjust. As such the Plaintiffs are entitled to restitution of monies paid to the Defendant as rental payments.

111.

In addition, La. C.C. art 2324 provides that a person who conspires with another person to commit an intentional and willful act is answerable, in solido, with that person for the damages caused by that act.

112.

Based on information and belief that Defendant Reginal Herd and Defendant Lashawna White acted in with one another, at all times pertinent hereto, in an effort with an intent to commit the tortious acts against the Plaintiffs and thereby caused them injuries and damages.

**DAMAGES**

113.

Based upon the above and foregoing, including all causes of action, Plaintiffs avers that Defendants are liable to them for the following non-exclusive damages sustained:

A. Physical pain and suffering;

B. Mental pain, anguish, and distress;

C. Severe emotional distress

D. Medical expenses

E. Loss of enjoyment of life

F. Loss of income and/or loss of earning capacity.

G. Special Damages

H. Cost associated with moving due the Plaintiffs breaches of contract.

I. Loss of use of property

J. Loss of past, present, and future wages.

K. Cost of inspections and expert evaluations and reports.

L. All damages under federal and state law which may be proven at the trial of this matter

114.

Plaintiffs have suffered emotional distress, financial loss, physical harm, shock, stress, and loss of affordable housing as a proximate result of the Defendants harassing, retaliation, discriminatory conduct and tactics in an amount according to proof.

115.

As a result of the Defendants' unlawful conduct, the Plaintiff has incurred special damages, including expenses related to the disability caused by his injuries. Further, due to the injuries suffered the Defendants are entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. They may continue to incur other expenses and other special damages, in amounts to be established at trial.

116.

Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988,

pre-judgment interest and costs as allowable by federal law.

## DEMAND FOR JURY TRIAL

Trial by jury is Demanded on all issues

**WHEREFORE**, the Plaintiff requests this Court:

A. Enter a judgment in favor of Plaintiffs and against each of the Defendants;

B. Declare that the Defendants violated aforementioned alleged federal statutes

C. Grant leave for plaintiffs to proceed in forma pauperis,

D. Grant the Plaintiffs' Special and General damages for the Defendants violation of the rights of the plaintiff described herein in an amount to be determined at trial.

E. Award the Plaintiffs Punitive Damages in an amount that would punish the Defendants for the willful, wanton, and reckless misconduct and indifference alleged in this complaint and that would effectively deter the Defendants from future harmful behavior.

F.  Award the Plaintiffs compensatory damages punitive damages against Defendants in amount that would fully compensate them Plaintiffs for their loss of enjoyment, humiliation, injuries, damages, mental anguish and expenses;

G.  Award the Plaintiffs reimbursement for all medical expenses

H.  Statutory Damages

I.  Award Plaintiff's counsel reasonable attorney's fees and costs pursuant to pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 42 U.S.C. § 3613(c)(2) and 29 U.S.C. 794a(b); and any other applicable provisions of law;

J.  Grant the Plaintiffs such other and further relief as may be just and proper under the circumstances, including but not limited to appropriate injunctive relief.

RESPECTFULLY SUBMITTED:

**James Word II, #37554**
Attorney for the Plaintiffs
2924 Brakley Drive  Unit B1
Baton Rouge, Louisiana 70816
Ph: 731-612-3079
JamesAustinWordII@attorneyword.com

**PLEASE SERVE**

A. **EAST BATON ROUGE PARISH HOUSING AUTHORITY,** through is
   Agent for Service of Process:

   J. Wesly Daniels
   4731 North Blvd
   Baton Rouge, LA, 70806

B. **J. Wesly Daniels, JR.** at his place of employment:

   East Baton Rouge Parish Housing Authority
   4731 North Blvd
   Baton Rouge, LA, 70806

C. **Reginald Herd,** at his place of employment:

   East Baton Rouge Parish Housing Authority
   4731 North Blvd
   Baton Rouge, LA, 70806

D. **Lashawna White** at her place of employment:

   999 Rosenwald Rd
   Baton Rouge, LA, 70807